HASSARD BONNINGTON LLP
THOMAS M. FRIEDER, ESQ., State Bar No. 95411
Two Embarcadero Center, Suite 1800
San Francisco, California 94111-3941
Telephone: (415) 288-9800
Fax: (415) 288-9801
Email: tmf@hassard.com

Attorneys for Defendants
DAVOL INC. and C.R. BARD, INC.

LODGED
2008 JUL 24 PM 3:02
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
BY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| CARMENITA NUNLEY<br><br>Plaintiff,<br><br>v.<br><br>C.R. BARD, INC., DAVOL INC., and DOES 1 to 100,<br><br>Defendants. | Case No. CV08-4064 (PSG) (JCx)<br><br>DEFENDANT C.R. BARD, INC.'S AND DEFENDANT DAVOL INC.'S AMENDED NOTICE OF REMOVAL |

PLEASE TAKE NOTICE THAT, pursuant to 28 U.S.C. §§ 1332, 1441 and 1446, Defendant C.R. Bard, Inc. ("Bard") and Defendant Davol Inc. ("Davol") (collectively "Defendants") previously removed the above-captioned action from the Superior Court of California in and for Los Angeles County, California, to this Court. (See Notice of Removal [Doc. 1].) Defendants now file this Amended Notice of Removal to comply with Paragraph 13 of the Court's Initial Standing Order [Doc. 7] and the Court's June 26, 2008 Order to Show Cause Regarding Subject Matter Jurisdiction [Doc. 12]. In further support of removal, Defendants state as follows:

**I. THE PROCEDURAL REQUIREMENTS FOR REMOVAL ARE SATISFIED.**

1. Plaintiff's Complaint makes allegations similar to numerous other product liability complaints filed against Bard and Davol throughout the country. Plaintiff



BY FAX

alleges that the Composix® Kugel® Hernia Patch, an FDA-approved medical device manufactured and sold by Davol for use in the repair of soft tissue defects, including hernias, was defective and unreasonably dangerous when put to its intended use. These matters have been consolidated for pretrial proceedings. *See In re Kugel Mesh Hernia Patch Prods. Liab. Litig.*, 493 F. Supp. 2d 1371 (J.P.M.L. 2007). With Defendants' removal, the present action can and should become part of those MDL proceedings in due course.

2. Plaintiff filed her Complaint in the Superior Court of California in and for Los Angeles County, California on or about May 15, 2008. Neither Bard nor Davol has been served with a copy of the Complaint or any state process.

3. As required by 28 U.S.C. § 1446(a), a copy of all process, pleadings, and orders served upon Bard and Davol (including Plaintiff's Complaint) was attached to Defendants' original Notice of Removal as Exhibit A.

4. The original Notice of Removal was properly directed to this Court pursuant to 28 U.S.C. § 1446(a), as it is the District Court embracing the Superior Court of California in and for Los Angeles County, California, where Plaintiff's Complaint is pending. *See* 28 U.S.C. § 84(c)(2).

5. The original Notice of Removal was timely under 28 U.S.C. § 1446(b), as it was filed within 30 days after the first receipt by Davol or Bard, through service, of Plaintiff's Complaint, which sets forth the bases for removal.

6. Pursuant to 28 U.S.C. § 1446(d), Bard and Davol filed a written notice of removal with the clerk of the Superior Court of California in and for Los Angeles County, California, where Plaintiff's Complaint was then pending. Copies of the original Notice of Removal and the written notice of same that was being provided to the state court were also served upon Plaintiff's counsel in accordance with 28 U.S.C. § 1446(d).

## II. THIS COURT HAS DIVERSITY JURISDICTION

7. As will be shown more fully below, this Court has original jurisdiction over

this action pursuant to 28 U.S.C. § 1332(a) because the amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000, and there is complete diversity of citizenship between Plaintiff and Bard and Davol, the only properly joined defendants. Thus, this action may be removed to this Court pursuant to 28 U.S.C. § 1441.

**A. The Amount-In-Controversy Requirement Is Satisfied**

8. Although Bard and Davol deny Plaintiff's claims, and while Plaintiff seeks an unspecified amount of damages, Defendants state that more than $75,000 is in controversy, and therefore the amount-in-controversy requirement of 28 U.S.C. § 1332(a) has been met. Plaintiff's claims sound in product liability and seek recovery for personal injuries allegedly caused by a defective medical device, the Composix® Kugel® hernia repair patch, that was designed and sold by Davol and used in conjunction with Plaintiff's hernia repair. (*See* Attachment to Compl. ¶ Prod. L-1.) Plaintiff alleges that due to its allegedly defective design, the Composix® Kugel® hernia patch failed, and, as a result, she sustained personal injuries which include a puncture of her intestine which was revealed after removal of the Composix® Kugel® hernia repair patch. (*Id.*) Plaintiff also claims that she has suffered loss of wages, hospital and medical expenses, and general damages. (*See* Compl. ¶ 10.) Plaintiff now seeks "an unlimited" amount in compensatory damages.

9. A defendant can establish the amount in controversy by the allegations in a complaint or by setting forth facts in the notice of removal that demonstrate that the amount in controversy exceeds $75,000.00. *Gaus v. Miles,* 980 F.2d 564, 576 (9th Cir. 1992). The amount-in-controversy requirement is easily met here, because the types of injuries alleged in Plaintiff's Complaint, in combination with Plaintiff's request for "unlimited" compensatory damages, make it "facially apparent that the claims are likely above" the requisite amount-in-controversy. *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995); *see also Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005) (citing *Allen v. R & H Oil & Gas Co., supra*). Likewise, federal

courts in analogous cases have held that the amount-in-controversy threshold is met because, as here, "the complaint . . . does not preclude recovery in excess of $75,000." *In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d 272, 296 (S.D.N.Y. 2001). In fact, plaintiff here was given an opportunity to limit her damages but chose not to.

10. Other plaintiffs have brought other actions against Bard and Davol making similar allegations as the ones expressed here pleading an amount-in-controversy in excess of $75,000. *See, e.g., Poston v. Davol Inc., et al.*, No. 2:07-cv-00032 (E.D. Cal.) (alleging damages "in the amount of $1,000,000,000"; plaintiff subsequently indicated there had been a clerical error, and the intended allegation was $1,000,000; the *Poston* pleadings were attached to Defendants' original Notice of Removal as Exhibit B); *see also In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d 272, 295-96 (S.D.N.Y. 2001) (looking to other suits involving the same product to resolve amount-in-controversy inquiry).

**B. The Parties Properly Joined In This Action Are Completely Diverse**

10. Plaintiff is a resident and citizen of California.

11. Bard is, and has been at all relevant times, a corporation organized under the laws of New Jersey with its principal place of business in New Jersey. *See* Affidavit of Mark Lederer, attached hereto as Exhibit A. Accordingly, Bard is a citizen of New Jersey, and not California. See 28 U.S.C. § 1332(c)(1).

12. Davol is, and has been at all relevant times, a corporation organized under the laws of the State of Delaware with its principal place of business in Rhode Island. *See* Affidavit of Mark Lederer, attached hereto as Exhibit A. Accordingly, Davol is a citizen of those two states, and not California. *See* 28 U.S.C. § 1332(c)(1).

13. The naming of fictitious defendants, namely Does 1 through 100, is disregarded in making determinations regarding removal. *See* 28 U.S.C. § 1441(a).

WHEREFORE, Defendant C.R. Bard, Inc. and Defendant Davol Inc. respectfully file this Amended Notice of Removal to further justify removal of this

action from the Superior Court of California in and for Los Angeles County, California, to this Court pursuant to 28 U.S.C. §§ 1332, 1441 and 1446. Should any question arise as to the propriety of this removal, Defendants respectfully request an opportunity to provide briefing and oral argument.

Dated: July 14, 2008

Respectfully submitted,

HASSARD BONNINGTON LLP

By ______________________
Thomas M. Frieder
Attorneys for Defendant DAVOL INC. and Defendant C. R. BARD, INC.

**PROOF OF SERVICE**

Case Name: Carmenita Nunley v. C.R. Bard, Inc. et al.

Court: United States District Court
Central District of California

**Case No.: CV08-4064 PSG (JCx)**

1. At the time of service I was over 18 years of age and not a party to this action.

2. My business address is Two Embarcadero Center, Suite 1800, San Francisco, CA 94111-3941.

3. On **July 24, 2008**, I served the following documents:

**DEFENDANT C.R. BARD, INC.'S AND DEFENDANT DAVOL INC.'S AMENDED NOTICE OF REMOVAL**

4. I served the documents on the persons below as follows:

Mark R. Schwartz, Esq.
Law Offices of Mark R. Schwartz
11355 West Olympic Boulevard
Suite 100
Los Angeles, CA 90064
(310) 235-2311 (Phone)

5. The documents were served by the following means (specify):

____ By personal service. I personally delivered the documents to the persons at the addresses listed in item 4. (1) For a party represented by an attorney, delivery was made to the attorney or at the attorney's office by leaving the documents in an envelope or package clearly labeled to identify the attorney being served with a receptionist or an individual in charge of the office. (2) For a party, delivery was made to the party or by leaving the documents at the party's residence with some person not less than 18 years of age between the hours of eight in the morning and six in the evening. The time of service was ________.

**X** By United States mail. I enclosed the documents in a sealed envelope or Package addressed to the persons at the addresses in item 4 and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this business practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid. I am a resident or employed in the county where the mailing occurred. The envelope or package was placed in the mail at San Francisco, California.

____ By overnight delivery. I enclosed the documents in an envelope or Package provided by an overnight delivery carrier and addressed to the persons at the addresses in item 4. I placed the envelope package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

____ By messenger service. I served the documents by placing them in an envelope or package addressed to the persons at the addresses listed in item 4 and providing them to a professional messenger service for service. (A declaration by the messenger must accompany this Proof of Service or be contained in the Declaration of Messenger below.)

____ By fax transmission. I faxed the documents to the person at the fax numbers listed in item 4. No error was reported by the fax machine that I used. .

____ By e-mail or electronic transmission. Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the persons at the e-mail addresses listed in item 4. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: **July 24, 2008**

Esther Hom [signature]

Esther Hom

# EXHIBIT A

**AFFIDAVIT OF MARK LEDERER**

COMES NOW, Mark Lederer, and having first been duly sworn states as follows:

1. My name is Mark Lederer. I am over the age of eighteen, and I am otherwise fully competent to make this affidavit.

2. I am the Vice President and Controller for Davol Inc. ("Davol"). Davol is a wholly owned subsidiary of C. R. Bard, Inc. ("Bard"). My duties for Davol include responsibility for the financial oversight and business operations of Davol. In conjunction with my duties for Davol I have access to information concerning the business operations of Bard as well. Therefore, I have knowledge of, or have been made aware of, the financial and business information set forth below relating to Bard.

**Davol Inc.**

3. Davol is incorporated under the laws of the State of Delaware. Davol has never been, nor has it ever sought to be, organized under the laws of the State of California. Attached to this affidavit as **Exhibit 1** is a copy of Davol's Articles of Incorporation.

4. Davol maintains its principal place of business in Rhode Island.

a. Davol's corporate headquarters is located in Warwick, Rhode Island. Davol does not maintain any corporate offices in California.

b. The vast majority of Davol's employees are located in Rhode Island. Davol employs 305 employees. Two-hundred of those employees are located in Rhode Island, including the majority of Davol's executive officers. Other than nine Territory and District Managers (sales representatives) who reside in California, no Davol employees are located in California.

c. The vast majority of Davol's real and tangible property is located within the State of Rhode Island. Davol does not own any land, building or other real property within the State of California.

d. The vast majority of Davol's production activities are conducted outside the State of California and primarily within either the State of Rhode Island or the Commonwealth of Puerto Rico. No production activities are conducted within the State of California.

e. Davol's products are sold nationwide, and therefore most of Davol's sales take place outside the State of California. Davol sales of all products, including those irrelevant to this particular matter, amounted to $281,737,087 for fiscal year 2007. Of that total sales figure, only 7.9% occurred within the State of California. During 2007, that State of Georgia had the highest percentage of Davol's total sales, which accounted for 8.99%. In 2007 and 2008, Davol had sales in all 50 states.

**C.R. Bard, Inc.**

5. Bard is incorporated under the laws of the State of New Jersey. Bard has never been, nor has it ever sought to be, organized under the laws of the State of California. Attached to this affidavit as **Exhibit 2** is a copy of Bard's Articles of Incorporation.

6. Bard maintains its principal place of business in New Jersey.

a. Bard's corporate headquarters is located in Murray Hill, New Jersey. Bard does not maintain any corporate offices in California.

b. The majority of Bard's employees are located outside of the State of California. Bard employs 2,439 employees. Of those, 2,371 employees are located outside of the State of California, including all of Bard's executive officers.

c. The majority of Bard's real and tangible property is located outside of the State of California, a large percentage of which is located within the State of New Jersey. Bard does not own any land, building or other real property within the State of California.

d. Bard's production activities are all conducted outside of the State of California. No production activities are conducted within the State of California.

e. Bard's products are sold nationwide, and therefore most of Bard's sales take place outside the State of California. Sales of all Bard products, including those irrelevant to this particular matter, amounted to $855,197,944 for fiscal year 2007. Of that total sales figure, 8.9% occurred within the State of California. Other states yielded relatively similar sales percentages, including Arizona, which accounted for 6.025%; Texas, which accounted for 4.99%; and Florida, which accounted for 4.44%. In 2007 and 2008, Bard had sales in all 50 states.

FURTHER AFFIANT SAYETH NOT.

Mark Lederer

Warwick, Rhode Island

Subscribed to and sworn before me this 2nd day of July, 2008.

Notary Public

My Commission Expires: 8/15/10

# EXHIBIT 1

REC 2-96 PAGE 293

CERTIFICATE OF INCORPORATION

OF

DAVOL INC.

I, the undersigned, in order to form a corporation for the purposes hereinafter stated, under and pursuant to the provisions of the General Corporation Law of the State of Delaware, being Title 8 Chapter 1 of the Delaware Code of 1953, and the Acts amendatory thereof and supplementary thereto, do hereby certify as follows:

FIRST: The name of the corporation is DAVOL INC. (hereinafter called the "Corporation").

SECOND: The location of the registered office of the Corporation in the State of Delaware is 100 West Tenth Street, in the City of Wilmington, County of New Castle. The name of its registered agent at that address is The Corporation Trust Company.

THIRD: The purpose of the Corporation is to engage in any lawful act or activity for which corporations may be organized under the General Corporation Law of Delaware.

S

REC 2-96 PAGE 294

FOURTH: The total number of shares of stock which the Corporation shall have authority to issue is one hundred shares of common stock of the par value of $10 per share.

FIFTH: The name and address of the incorporator is as follows:

| Name | Address |
|---|---|
| Bartlett H. McGuire | 207 East 74th Street<br>New York, New York 10021 |

SIXTH: The powers of the incorporator shall terminate upon the filing of this Certificate of Incorporation. The names and addresses of the persons who are to serve as directors of the Corporation until the first annual meeting of stockholders or until their successors are elected and qualify are set forth below in accordance with Section 102(a)(6) of the General Corporation Law of Delaware:

| Name | Address |
|---|---|
| Bartlett H. McGuire | 207 East 74th Street<br>New York, New York 10021 |
| Edwin C. Cohen | 132 State Street<br>Brooklyn, New York 11201 |
| E. Deane Leonard | 1148 Fifth Avenue<br>New York, New York 10028 |

S



SEVENTH: In furtherance and not in limitation of the powers conferred by law, the Board of Directors of the Corporation is expressly authorized:

(a) To make, alter, amend or repeal the By-Laws of the Corporation.

(b) To direct and determine the use and disposition of net profits or net assets in excess of capital; to set apart out of any of the funds of the Corporation available for dividends a reserve or reserves for any proper purpose; and to abolish any such reserve in the manner in which it was created.

(c) To establish bonus, profit-sharing, stock option, retirement or other types of incentive or compensation plans for the employees (including officers and directors) of the Corporation and to fix the amount of the profits to be distributed or shared and to determine the persons to participate in any such plans and the amounts of their respective participations.

(d) From time to time to determine whether and to what extent, and at what time and places and under what conditions and regulations, the accounts and books of the Corporation (other than the stock ledger), or any of them, shall be open to the inspection of the stockholders; and no stockholder shall have any right to inspect any account or book or document of the Corporation, except as conferred by statute or authorized by the Board of Directors or by a resolution of the stockholders.

(e) To authorize, and cause to be executed, mortgages and liens upon the real and personal property of the Corporation.

EIGHTH: Whenever the vote of stockholders at a meeting thereof is required or permitted to be taken for or in connection with any corporate action by any

S



provision of the General Corporation Law of Delaware, the meeting and vote of stockholders may be dispensed with if the holders of stock having not less than the minimum percentage of the vote required by statute for the proposed corporate action shall consent in writing to such corporate action being taken, provided that prompt notice must be given to all stockholders of the taking of such corporate action without a meeting and by less than unanimous written consent.

NINTH: The Corporation reserves the right to amend, alter, change or repeal any provision contained in this Certificate of Incorporation in the manner now or hereafter prescribed by law, and all rights and powers conferred herein on stockholders and directors are subject to this reserved power.

IN WITNESS WHEREOF, I have hereunto set my hand and seal, the 14th day of October, 1968.

Bartley H McGuire (SEAL)

S

REC 2-96 PAGE 297

STATE OF NEW YORK )
: ss.:
COUNTY OF NEW YORK )

On this 14th day of October, 1968, there personally came before me Bartlett H. McGuire, the person who executed the foregoing certificate, known to me personally to be such, and he duly executed said certificate before me and acknowledged that it was his act and deed and that the facts stated therein are true.

IN WITNESS WHEREOF, I have hereunto set my hand and seal of office the day and year aforesaid.

Serafina R. Di Preta

SERAFINA R. DI PRETA
Notary Public, State of New York
No. 41-0967225 Queens County
Cert. filed in New York County
Term expires March 30, 1969

SERAFINA R. DI PRETA · NOTARY PUBLIC · STATE OF NEW YORK

SERAFINA R. Di PRETA
NOTARY PUBLIC
STATE OF NEW YORK

REC 2-96 PAGE 298

# State of Delaware

## Office of Secretary of State.

*I, Elisha C. Dukes, Secretary of State of the State of Delaware, do hereby certify that the above and foregoing is a true and correct copy of*

Certificate of Incorporation of the "DAVOL INC.", as received and filed in this office the fifteenth day of October, A.D. 1968, at 10 o'clock A.M.

*In Testimony Whereof, I have hereunto set my hand and official seal at Dover this* fifteenth *day of* October *in the year of our Lord one thousand nine hundred and* sixty-eight.

Elisha C Dukes

Secretary of State

[signature]

Ass't Secretary of State

FORM 121

REC F-99 PAGE 465

# State of Delaware

## Office of Secretary of State.

*I, Eugene Bunting, Secretary of State of the State of Delaware,* **do hereby certify** *that the above and foregoing is a true and correct copy of*

Certificate of Change of Agent and Location of Registered Office of the "DAVOL INC.", as received and filed in this office the eighteenth day of March, A.D. 1969, at 9 o'clock A.M.

**In Testimony Whereof,** *I have hereunto set my hand and official seal at Dover this* eighteenth *day of* March *in the year of our Lord one thousand nine hundred and* sixty-nine.

Eugene Bunting

Secretary of State

R W Caldwell

Ass't Secretary of State

FORM 121

REC'D FOR RECORD Mar. 19, 1969 LEO J. DUGAN, Jr. Recorder

RECF--99 PAGE 463

CERTIFICATE OF CHANGE OF LOCATION OF REGISTERED OFFICE

AND OF REGISTERED AGENT

It is hereby certified that:

1. The name of the corporation (hereinafter called the "corporation") is Davol Inc.

2. The registered office of the corporation within the State of Delaware is hereby changed to 229 South State Street, City of Dover, County of Kent.

3. The registered agent of the corporation within the State of Delaware is hereby changed to The Prentice-Hall Corporation System, Inc., the business office of which is identical with the registered office of the corporation as hereby changed.

4. The corporation has authorized the changes hereinbefore set forth by resolution of its Board of Directors.

Executed at New York , New York , on March 13 , 1969

Charles R. Beall
Vice-President

[corporate seal]

Attest:

Paul B. Carrell
Secretary



Del.-FHA-flexo

REC F--99 PAGE 464

STATE OF NEW YORK )
) SS.:
COUNTY OF NEW YORK )

BE IT REMEMBERED that, on March 13 , 1969, before me, a Notary Public duly authorized to take acknowledgement of deeds by the laws of the place where the foregoing instrument was executed, personally came Charles R. Beall , Vice -President of Davol Inc.,

who duly signed said instrument before me and acknowledged that his signing of the said instrument upon behalf of said corporation is his act and deed, that the said instrument as executed is the act and deed of said corporation, and that the facts stated in the said instrument are true.

GIVEN under my hand on March 13 , 1969.

Frank H. Argenzio
Notary Public

FRANK H. ARGENZIO
NOTARY PUBLIC, State of New York
No. 03-5099617
Qualified in Bronx County
Cert. filed in New York County
Commission Expires March 30, 1970

NOTARY PUBLIC

~~[If Notary has seal affix, affix same]~~,



Del.-FHA-flexo

VOL M120 PAGE 834

BOOK B VOL 53 PAGE 191

CERTIFICATE OF CHANGE OF REGISTERED AGENT

AND

REGISTERED OFFICE

OF

DAVOL INC.

* * * * * *

DAVOL INC., a corporation organized and existing under and by virtue of the General Corporation Law of the State of Delaware, DOES HEREBY CERTIFY:

The present registered agent of the corporation is THE PRENTICE-HALL CORPORATION SYSTEM, INC. and the present registered office of the corporation is in the County of Kent.

The Board of Directors of DAVOL INC., by the unanimous written consent of its members, filed with the minutes of the board, duly adopted the following resolution:

> "Resolved, that the registered office of DAVOL INC. in the State of Delaware be and it hereby is changed to No. 100 West Tenth Street, in the City of Wilmington, County of New Castle, and the authorization of the present registered agent of this corporation be and the same is hereby withdrawn, and THE CORPORATION TRUST COMPANY, shall be and is hereby constituted and appointed the registered agent of this corporation at the address of its registered office."

BOOK B VOL 53 PAGE 192

VOL M120 PAGE 830

IN WITNESS WHEREOF, DAVOL INC. has caused this statement to be signed by EDWARD G. GEIST, its Vice President, and attested by ROBERT C. WICKETT, its Assistant Secretary, this 7th day of November 1975.

By [signature]
Edward G. Geist, Vice President

ATTEST:

By [signature]
Robert C. Wickett,
Assistant Secretary

jk

BOOK 13 VOL 53 PAGE 193

VOL M120 PAGE 830

# State of DELAWARE

Office of SECRETARY OF STATE

*I,* Robert H. Reed, *Secretary of State of the State of Delaware, do hereby certify that the above and foregoing is a true and correct copy of* Certificate of Change of Agent and Location of Registered Office of the "DAVOL INC.", as received and filed in this office the tenth day of December, A.D. 1975, at 10 o'clock A.M.

In Testimony Whereof, *I have hereunto set my hand and official seal at Dover this* tenth *day of* December *in the year of our Lord one thousand nine hundred and* seventy-five.

RECEIVED FOR RECORD
Dec. 10 A.D. 1975

Robert J. Conaway
RECORDER

Robert H. Reed
Robert H. Reed, *Secretary of State*

*Ass't Secretary of State*

RECORDED FOR RECORD DEC 17 1975 19

LEO J. DUGAN, Jr. Recorder

# EXHIBIT 2

# C. R. BARD, INC.

## RESTATED CERTIFICATE OF INCORPORATION

Pursuant to the provisions of Section 14A:9-5, Corporations, General, of the New Jersey Statutes, the undersigned Corporation hereby executes the following Restated Certificate of Incorporation:

FIRST: The name of the corporation is C. R. BARD, INC.

SECOND: The purpose or purposes for which the Corporation is organized are to engage in any activity within the lawful business purposes for which corporations may be organized under the New Jersey Business Corporation Act.

THIRD: The aggregate number of shares which the Corporation is authorized to issue is 605,000,000 shares, consisting of 600,000,000 shares of Common Stock, par value $.25 (Twenty Five Cents) per share, and 5,000,000 shares of Preferred Stock, par value $1.00 (One Dollar) per share. The designations, relative rights, preferences and limitations of the shares of each class shall be as follows:

Subject to the provisions hereof, the Board of Directors is hereby expressly authorized to divide shares of Preferred Stock into classes and into series within any class or classes, to issue the shares of Preferred Stock in such class or classes and in series within any class or classes, and to fix from time to time, before issuance, the number of shares to be included in each class or series within a class and the designation, relative rights, preferences and limitations of all shares of each class or series within a class. The authority of the Board of Directors with respect to each class or series within a class shall include, without limitation, the determination of any or all of the following matters:

(a) The number of shares constituting such class or series within a class and the designation thereof to distinguish the shares of such class or series within a class from the shares of all other classes or series;

(b) The annual dividend rate on the shares of such class or series within a class and whether such dividends shall be cumulative and, if cumulative, the date from which dividends shall accumulate;

(c) The redemption price or prices for shares of such class or series within a class, if redeemable, and the terms and conditions of such redemption;

(d) The preference, if any, of shares of such class or series within a class in the event of any voluntary or involuntary liquidation, dissolution or winding up of the Corporation;

(e) The voting rights, if any, of shares of such class or series within a class in addition to the voting rights prescribed by law and the terms of exercise of such voting rights;

(f) The rights, if any, of shares of such class or series within a class to be converted into shares of any other class or series, including Common Stock, and the terms and conditions of such conversion;

(g) The terms or amount of any sinking fund provided for the purchase or redemption of such class or series within a class; and

(h) Any other relative rights, preferences and limitations of such class or series within a class.

The shares of each class and of each series within a class may vary from the shares of any other class or series as to any of such matters.

Dividends on all outstanding shares of Preferred Stock must be declared and paid, or set aside for payment, before any dividends may be declared and paid, or set aside for payment, on shares of Common Stock with respect to the same dividend period.

Each share of Common Stock shall be equal in all respects to every other share of Common Stock.

FOURTH: No holder of any shares of the Corporation, now or hereafter authorized, shall have any right as such holder to purchase or subscribe for or otherwise acquire any shares or any securities or obligations convertible into, or exchangeable for, or any right, warrant or option to purchase, any shares of any class which the Corporation may at any time hereafter issue or sell, whether now or hereafter authorized, but any and all such shares, securities, obligations, rights, warrants and options may be issued and disposed of by the Board of Directors to such persons, firms, corporations and associations, and for such lawful consideration, and on such terms, as the Board of Directors in its discretion may determine, without first offering the same, or any thereof, to the shareholders.

FIFTH: The address of the Corporation's current registered office is 730 Central Avenue, Murray Hill, New Jersey 07974, and the name of the Corporation's current registered agent at such address is Stephen J. Long.

SIXTH: The Board of Directors of the Corporation shall consist of no fewer than three and no more than fourteen directors, with the exact number of directors to be determined in accordance with the By-Laws of the Corporation. The directors of the Corporation shall be divided into three classes, namely, Classes I, II and III, with each class consisting of not fewer than one nor more than five directors, as determined in accordance with the By-Laws of the Corporation. At each annual meeting of shareholders, the successors to any class of directors whose terms shall then expire shall be elected to serve until the third annual meeting following their election and until their successors shall be elected and qualified. Directors elected as hereinbefore provided may not be removed prior to the expiration of their respective terms of office without cause.

Notwithstanding any provision of this Restated Certificate of Incorporation to the contrary, (1) no amendment to this Restated Certificate of Incorporation shall amend, alter, change or repeal any provision of this Article SIXTH except upon the affirmative vote of the

holders of at least seventy-five percent of the outstanding shares of all classes of capital stock of the Corporation entitled to vote thereon, and (2) no amendment to this Restated Certificate of Incorporation shall be adopted empowering shareholders to remove directors without cause except upon the affirmative vote of the holders of at least seventy-five percent of the outstanding shares of all classes of capital stock of the Corporation entitled to vote thereon.

The number of directors constituting the current Board of Directors is ten, the address for each of them is C. R. Bard, Inc., 730 Central Avenue, Murray Hill, New Jersey 07974, and their names and classes are as follows:

CLASS I

Timothy M. Ring
Marc C. Breslawsky
Herbert L. Henkel
Tommy G. Thompson

CLASS II

Theodore E. Martin
Anthony Welters
Tony L. White

CLASS III

T. Kevin Dunnigan
Gail K. Naughton, Ph.D.
John H. Weiland

SEVENTH: The Corporation shall indemnify its directors, officers and employees in the manner and to the extent permitted by the laws of the State of New Jersey.

EIGHTH: Subject to the provisions of the New Jersey Business Corporation Act, contracts or other transactions between the Corporation and its directors or between the Corporation and other firms or associations in which its directors are interested in any way, shall not be void or voidable due solely to such common interest.

NINTH: Subject to the provisions of the New Jersey Business Corporation Act, the directors, and committee members appointed by the Board of Directors, shall not be liable in the discharge of their duties when relying in good faith upon the corporate records and/or competent advice of any type.

TENTH: Except for actions required or permitted to be taken at a meeting of shareholders by Chapter 10 of the New Jersey Business Corporation Act, any action required or permitted to be taken at a meeting of shareholders may be taken without a meeting upon the written consent of shareholders who would have been entitled to cast the minimum number of

votes which would be required to take such action at a meeting at which all shareholders entitled to vote thereon are present.

ELEVENTH: Except as set forth below, the affirmative vote of the holders of at least seventy-five percent of the outstanding shares of all classes of capital stock of the Corporation entitled to vote thereon, shall be required in order to authorize or adopt (a) any agreement for the merger or consolidation of the Corporation with or into any other corporation which is required by law to be approved by shareholders, (b) any sale, lease, transfer or other disposition by the Corporation of all or any substantial part of the assets of the Corporation to any other corporation, person or other entity, or (C) any issuance or delivery of securities of the Corporation in exchange or payment for any securities, properties or assets of any other person in a transaction in which the authorization or approval of shareholders of the Corporation is required by law or by any agreement to which the Corporation is a party, if as of the record date for the determination of shareholders entitled to notice thereof and to vote thereon or consent thereto, such other corporation, person or entity which is a party to such transaction is the beneficial owner, directly or indirectly, of more than 5% of the outstanding shares of stock of the Corporation.

For the purpose of this Article ELEVENTH (a) any corporation, person or other entity shall be deemed to be the beneficial owner of any shares of stock of the Corporation (i) which it owns directly, whether or not of record, or (ii) which it has the right to acquire pursuant to any agreement or understanding or upon exercise of conversion rights, warrants or options, or otherwise, or (iii) which are beneficially owned, directly or indirectly (including shares deemed owned through application of clause (ii) above), by an "affiliate" or "associate" (as defined below) or (iv) which are beneficially owned, directly or indirectly (including shares deemed owned through application of clause (ii) above), by any other corporation, person or entity with which it or its "affiliate" or "associate" has any agreement, arrangement or understanding for the purpose of acquiring, holding, voting or disposing of stock of the Corporation, and (b) the outstanding shares of any class of stock of the Corporation shall include shares deemed owned through application of clauses (a) (ii), (iii) and (iv), above but shall not include any other shares which may be issuable pursuant to any agreement, or upon exercise of conversion rights, warrants or options, or otherwise.

The term "affiliate" is defined as:

An "affiliate" of, or a person "affiliated" with, a specified person, is a person that directly, or indirectly through one or more intermediaries, controls, or is controlled by, or is under common control with, the persons specified.

The term "associate" is defined as:

The term "associate" used to indicate a relationship with any person, means (1) any corporation or organization (other than this Corporation or a majority-owned subsidiary of this Corporation) of which such person is an officer or partner or is, directly or indirectly, the beneficial owner of 10% or more of any class of equity securities, (2) any trust or other estate in which such person has a substantial beneficial interest or as to which such person serves as trustee or in a similar fiduciary capacity,

and (3) any relative or spouse of such person, or any relative of such spouse, who has the same home as such person or who is a director or officer of this Corporation or any of its parents or subsidiaries.

The provisions of this Article ELEVENTH shall not be applicable to (i) any merger or consolidation of the Corporation with or into any other corporation, or any sale or lease of all or any substantial part of the assets of the Corporation to any other corporation, person or entity, if the Board of Directors of the Corporation shall by resolution have approved a memorandum of understanding, letter of intent or agreement with such other corporation, person or entity with respect to and substantially consistent with such transaction, prior to the time that such other corporation, person or entity shall have become a beneficial owner of more than 5% of the outstanding shares of stock of the Corporation, or (ii) any merger or consolidation of the Corporation with, or any sale to the Corporation or any subsidiary thereof of any of the assets of, any corporation of which a majority of the outstanding shares of stock is owned of record or beneficially by the Corporation and its subsidiaries.

The Board of Directors shall have the power and duty to determine for the purposes of this Article ELEVENTH on the basis of information known to the Corporation, whether (i) such other corporation, person, or other entity beneficially owns more than 5% of the outstanding shares of stock of the Corporation, (ii) such corporation, person or entity is an "affiliate" or "associate" (as defined above) of another, and (iii) the memorandum of understanding, letter of intent or agreement referred to above is substantially consistent with the transaction covered thereby. Any such determination shall be conclusive and binding for all purposes of this Article ELEVENTH.

No amendment to this Restated Certificate of Incorporation shall amend, alter, change or repeal any of the provisions of this Article ELEVENTH, unless the amendment affecting such amendment, alteration, change or repeal shall receive the affirmative vote of the holders of at least seventy-five percent of the outstanding shares of all classes of capital stock of the Corporation entitled to vote thereon.

TWELFTH: The provisions of this Article TWELFTH shall be applicable to any transaction to which Article ELEVENTH is applicable (each such transaction being referred to hereinafter in this Article TWELFTH as a "Special Business Combination"); provided, however, that the provisions of this Article TWELFTH shall not be applicable to any Special Business Combination which shall have been approved by a majority of those members of the Corporation's Board of Directors who were in office immediately prior to the time when any shareholder of the Corporation which is a party to such Special Business Combination became an Interested Shareholder (as such term is defined below). No Special Business Combination to which this Article TWELFTH is applicable shall be authorized or adopted unless the conditions specified in clauses (i) and (ii) below are satisfied:

(i) Minimum Price and Form of Consideration

(A) The holders of shares of each class or series of the outstanding shares of all classes of capital stock of the Corporation entitled to vote thereon ("Voting Shares") are to receive in such Special Business Combination an aggregate amount of cash and fair

value of consideration per share other than cash that either shall be solely in cash or shall be in the same form and of the same kind as the consideration paid by the Interested Shareholder and its "affiliates" and "associates" (as such terms are defined in Article ELEVENTH) in acquiring the majority of the outstanding Voting Shares beneficially owned by them at the time of such Special Business Combination; and

(B) The holders of shares of Common Stock of the Corporation are to receive in such Special Business Combination an aggregate amount of cash and fair value of consideration per share other than cash that shall be at least equal to the higher of the following:

(1) the highest per share price (with appropriate adjustments for recapitalization and for stock splits, stock dividends and similar distributions) paid by such Interested Shareholder and its affiliates and associates for any shares of Common Stock acquired by them within the three-year period prior to the record date of the meeting of shareholders called to consider and vote upon the proposed Special Business Combination; or

(2) the per share book value of the Common Stock at the end of the fiscal quarter immediately preceding the record date of the meeting of shareholders called to consider and vote upon the proposed Special Business Combination; and

(C) The holders of shares of each class or series of Voting Shares other than Common Stock, if any, are to receive in such Special Business Combination an aggregate amount of cash and fair value of consideration per share other than cash that shall be at least equal to the highest per share price (with appropriate adjustments for recapitalizations and for stock splits, stock dividends and similar distributions) paid by such Interested Shareholder and its affiliates and associates for any shares of such class or series of Voting Shares acquired by them within the three-year period prior to the record date of the meeting of shareholders called to consider and vote upon the proposed Special Business Combination.

(ii) Procedural Requirements

(A) After such Interested Shareholder has become an Interested Shareholder and prior to the consummation of such Special Business Combination, (1) there shall have been no failure to declare and pay at the regular date therefor any full periodic dividends (whether or not cumulative) on any Preferred Stock issued and outstanding pursuant to this Restated Certificate of Incorporation, (2) there shall have been (x) no reduction in the annual rate of dividends paid on the Common Stock (except as necessary to reflect any subdivision of the Common Stock) and (y) an increase in such annual rate of dividends as necessary to reflect any reclassification (including any reverse stock split), recapitalization, reorganization or any similar transaction that has the effect of reducing the number of outstanding shares of the Common Stock, and (3) such Interested Shareholder shall not have become the beneficial owner of any

additional shares of Voting Shares except as part of the transaction that results in such Interested Shareholder's becoming an Interested Shareholder.

(B) After such Interested Shareholder has become an Interested Shareholder, such Interested Shareholder shall not have received the benefit, directly or indirectly (except proportionately as a shareholder), of any loans, advances, guarantees, pledges or other financial assistance or any tax credits or other tax advantages provided by the Corporation.

(C) A proxy or information statement describing the proposed Special Business Combination and complying with the requirements of the Securities Exchange Act of 1934, as amended, and the rules and regulations thereunder (or any subsequent provisions replacing such Act, rules or regulations) shall be mailed to public shareholders of the Corporation at least 30 days prior to the consummation of such Special Business Combination (whether or not such proxy or information - statement is required to be mailed pursuant to such Act or subsequent provisions). Any such proxy or information statement shall also contain the recommendations of each of the members of the Board of Directors as to the advisability of the proposed Special Business Combination as well as the opinion of an investment banker selected by a majority of the members of the Board of Directors as to the fairness of the terms of the proposed Special Business Combination to the Corporation and its shareholders.

The Board of Directors shall have the power and duty to determine for the purposes of this Article TWELFTH on the basis of information known to the Corporation (i) whether any corporation, person, or other entity beneficially owns more than 5% of the outstanding shares of stock of the Corporation, (ii) whether any corporation, person or entity is an "affiliate" or "associate" (as defined in Article ELEVENTH) of another; (iii) whether a Special Business Combination has been proposed, (iv) the fair value of any consideration other than cash to be received by holders of shares of any class or series of Voting Shares in a Special Business Combination; and (v) any other relevant facts necessary to determine the applicability of any provision of this Article TWELFTH to a Special Business Combination. Any such determination shall be conclusive and binding for all purposes of this Article TWELFTH.

For the purposes of this Article TWELFTH, the term "Interested Shareholder" is defined as the beneficial owner, directly or indirectly (including shares deemed owned by an "affiliate" or "associate" of such person as described in Article ELEVENTH), of more than 5% of the outstanding shares of stock of the Corporation.

No amendment to this Restated Certificate of Incorporation shall amend, alter, change or repeal any of the provisions of this Article TWELFTH, unless the amendment effecting such amendment, alteration, change or repeal shall receive the affirmative vote of the holders of at least a majority of the voting power of each class of capital stock of the Corporation; provided, however, that if on the record date for the meeting at which such proposed action is submitted to shareholders there is an Interested Shareholder who has proposed a Special Business Combination, or on whose behalf a Special Business Combination has been

proposed, then the votes of such Interested Shareholder and its affiliates and associates shall not be counted in calculating the requisite vote for approval of the proposed action.

THIRTEENTH: Except as expressly permitted in the next succeeding paragraph of this Article THIRTEENTH, any purchase by the Company, or any Subsidiary (as hereinafter defined), of shares of Voting Stock (as hereinafter defined) from a 5% Shareholder (as hereinafter defined) at a per share price in excess of the Market Price (as hereinafter defined) at the time of such purchase of the shares so purchased shall require the affirmative vote of the holders of that amount of the voting power of the Voting Stock equal to the sum of (i) the voting power of the shares of Voting Stock of which the 5% Shareholder is the beneficial owner (as hereinafter defined) and (ii) a majority of the voting power of the remaining outstanding shares of Voting Stock, voting together as a single class.

The provisions of the first paragraph of this Article THIRTEENTH shall not be applicable to any purchase of shares of Voting Stock pursuant to (i) an offer, made available on the same terms, to the holders of all of the outstanding shares of the same class of Voting Stock as those so purchased or (ii) a purchase program effected on the open market and not as a result of a privately-negotiated transaction.

For the purposes of this Article THIRTEENTH:

(i) A "person" shall mean any individual firm, corporation or other entity.

(ii) "Voting Stock" shall mean the outstanding shares of all classes of capital stock of the Company entitled to vote generally in the election of directors.

(iii) "5% Shareholder" shall mean any person (other than the Company or any Subsidiary) who or which:

(a) is the beneficial owner, directly or indirectly, of more than 5% of the voting power of the outstanding shares of Voting Stock; or

(b) is an affiliate (as such term is defined in Article ELEVENTH) of the Company and at any time within the two-year period immediately prior to the date in question was the beneficial owner, directly or indirectly, of more than 5% of the voting power of the then outstanding shares of Voting Stock; or

(c) is an assignee of or has otherwise succeeded to any shares of Voting Stock which were at any time within the two-year period immediately prior to the date in question beneficially owned by any 5% Shareholder, if such assignment or succession shall have occurred in the course of a transaction or series of transactions not involving a public offering within the meaning of the Securities Act of 1933.

(iv) A person shall be a "beneficial owner" of any shares of Voting Stock:

(a) which such person or any of its affiliates or associates (as such term is defined in Article ELEVENTH) beneficially owns, directly or indirectly; or

(b) which such person or any of its affiliates or associates has (1) the right to acquire (whether such right is exercisable immediately or only after the passage of time), pursuant to any agreement, arrangement or understanding or upon the exercise of conversion rights, exchange rights, warrants or options, or otherwise, or (2) the right to vote pursuant to any agreement, arrangement or understanding; or

(c) which are beneficially owned, directly or indirectly, by any other person with which such person or any of its affiliates or associates has any agreement, arrangement or understanding for the purpose of acquiring, holding, voting or disposing of any shares of Voting Stock.

(v) For the purpose of determining whether a person is a "5% Shareholder" pursuant to clause (iii) above, (the number of shares of Voting Stock deemed to be outstanding shall include shares deemed owned through application of clause (iv) above, but shall not include any other shares of Voting Stock which may be issuable pursuant to any agreement, arrangement or understanding, or upon exercise of conversion rights, warrants or options, or otherwise.

(vi) "Subsidiary" shall mean any corporation of which a majority of any class of equity security is owned, directly or indirectly, by the Company; provided, however, that for the purpose of the definition of a "5% Shareholder" set forth in clause (iii) above the term "Subsidiary" shall mean only a corporation of which a majority of the voting power of the capital stock entitled to vote generally in the election of directors is owned, directly or indirectly, by the Company.

(vii) "Market Price" shall mean the last closing sale price immediately preceding the time in question of a share of the stock in question on the Composite Tape for New York Stock Exchange Listed Stocks, or, if such stock is not quoted on the Composite Tape, on the New York Stock Exchange, or, if such stock is not listed on such Exchange, on the principal United States securities exchange registered under the Securities Exchange Act of 1934 on which such stock is listed, or, if such stock is not listed on any such exchange, the last closing bid quotation with respect to a share of such stock immediately preceding the time in question on the National Association of Securities Dealers, Inc., Automated Quotations System or any comparable system then in use (or any other system of reporting or ascertaining quotations then available), or, if such stock is not so quoted, the fair market value at the time in question of a share of such stock as determined by a majority of the entire Board of Directors in good faith.

The Board of Directors of the Company shall have the power and duty to determine for the purposes of this Article THIRTEENTH, on the basis of information known to them after reasonable inquiry, (i) whether the provisions of this Article THIRTEENTH are applicable to a particular transaction (ii) whether a person is a 5% Shareholder, (iii) the number

of shares of Voting Stock beneficially owned by any person and (iv) whether a person is an affiliate or an associate of another person. The good faith determination of the Board of Directors shall be conclusive and binding for all purposes of this Article THIRTEENTH.

Notwithstanding any other provision of this Restated Certificate of Incorporation or the By-Laws, as amended, of the Company (and notwithstanding the fact that a lesser percentage may be specified by law, this Restated Certificate of Incorporation or the By-Laws, as amended, of the Company), the affirmative vote of the holders of at least seventy-five percent of the voting power of the outstanding Voting Stock, voting together as a single class, shall be required to alter, amend or repeal, or adopt any provision inconsistent with, this Article THIRTEENTH.

FOURTEENTH: A director or officer of the Corporation shall not be personally liable to the Corporation or its shareholders for breach of duty as a director or officer, except to the extent and for the duration of any period of time such personal liability may not be eliminated or limited under the New Jersey Business Corporation Act as the same exists or may hereafter be amended.

FIFTEENTH: Except as otherwise required by law, directors of the Corporation shall be elected by the affirmative vote of a majority of the votes cast in person or by proxy by the holders of outstanding shares of all classes of capital stock of the Corporation entitled to vote for the election of directors, at a meeting at which a quorum is present, unless the number of nominees exceeds the number of directors to be elected, in which case, directors shall be elected by a plurality of the votes cast in person or by proxy by the holders of outstanding shares of all classes of capital stock of the Corporation entitled to vote for the election of directors, at the meeting at which a quorum is present. Any votes that may be "withheld", within the meaning of Rule 14a-4(b)(2) of the proxy solicitation rules and regulations promulgated under the Securities Exchange Act of 1934, as amended, shall be counted as cast for the purpose of determining the number of votes cast.

Dated as of the 11th day of June, 2008.

C. R. BARD, INC.

By ______________________

Timothy M. Ring
Chairman and Chief Executive Officer



SFNJ1 1215964v2